Good morning. I'm Dean Sandford from the Federal Defenders, and I'm here for Jamie Brooks. The issue in this case is whether the district court erred in applying the attempted murder guideline based on a mere finding that Mr. Brooks acted with malice of forethought. The answer to that question is yes, because the guideline, like the offenses that it encompasses, requires proof of specific intent to kill. A finding of malice doesn't equate to specific intent because malice can be shown through extreme indifference, which is exactly what the government argued below in asking the court to apply the guideline. So for three reasons, the text of the guideline requires proof of specific intent. First, it's titled attempted murder and assault with intent to commit murder, and it says that it applies to those offenses. Those offenses all require specific intent, and the government doesn't contend otherwise. Second, the guideline speaks in terms of the object of the offense, and in this context, what object means is the defendant's purpose and goal. This court has said repeatedly that purpose is synonymous with specific intent, to say that someone's acting purposefully is to say that they're acting with specific intent. Third, attempt has long been understood to require specific intent. That was the rule of common law. So, you know, for the commission to deviate from that approach or to presume that the commission is deviating from that approach, there would have to be pretty clear evidence that that's what they were trying to do. Otherwise, we would assume that they were retaining the normal rule. But there's nothing in this guideline that suggests that they were deviating from that rule. Can you start with the language? Sure. The language Talk me through how you read the language. Okay. So, the subsection A says if the object of the offense would have constituted first-degree murder. The provision that we're dealing with says if otherwise. I think the parties both agree that at least in this case, if otherwise basically means if the object of the offense would have constituted second-degree murder. So, the way that applies to second-degree murder is if the object of the offense was to kill someone with the intent necessary for second-degree murder, which is specific intent without premeditation. That's the difference between intentional murder, intentional second-degree murder, and first-degree murder is that it's specific. It's an intentional murder, but it lacks the premeditation that would make it first-degree murder. I hope that answers your question about the language. Well, okay. Maybe you can respond to the government's argument that the required mens rea for secondary murder is not specific intent. That's right. For a completed second-degree murder, malice is enough, which can be shown through extreme recklessness. But for attempted second-degree murder... And how do you get there? Yeah. How do you get to the attempt has to be specific. Gotcha. Because that's what attempt requires. An attempt to commit any... So, it's not the language. You're not basing your argument on the language. I guess that's what I'm getting at. Well, I am basing my argument in the language in the sense that this guideline is intended to apply to attempted murder and assault with intent to commit murder. That includes attempted second-degree murder. But attempted murder requires specific intent to kill. So, because the guideline applies to those crimes, and those crimes all require specific intent, that's what the guideline requires as well. So, the government kind of focuses on this would-have-constituted language, but it essentially reads out the object of the offense language. And our reading gives effect to the guideline in its entirety because it says, you know, if the offense... If the object of the offense would have constituted second-degree murder, is the way we're reading this, that can all be shown if the defendant is trying to kill someone but without the premeditation that's required. So, you're saying you're reading that to say if the completed offense would have constituted second-degree murder. That's right. Rather than if the object of the offense would have... That's correct. That's correct. I mean, and speaking in terms of the object of the offense, that is a pretty standard way to describe attempt because what object means in this context is the goal or the purpose. That's what object means. And so, it's what the defendant is trying to achieve. And what he's trying to achieve is what he's intending to achieve. Well, let's assume you get there and we agree with you and the specific intent is required and the district court was kind of all over the place on that but seems to have not, clearly didn't make a finding of specific intent. But there were some commentary, and the government does argue this is harmless because there was quite a bit of commentary by the district court as to, and indicating that perhaps it might have found intent. Can you address the harmless error? Sure, sure, of course. And I'll start with the district court's comments since your question focused on that. All the district court said that the government points to is that Mr. Brooks had the time and opportunity to consider the situation. I'm sorry, I'm having a little... That Mr. Brooks had the time and opportunity to consider the situation. That's not a finding that he was trying to kill someone. It just is a finding that he kind of had his wits about him and knew what he was doing. And, you know, if you look at the court's ruling as a whole, what the court says is malice of forethought is enough, extreme recklessness satisfies malice of forethought, and I find that Mr. Brooks acted with malice. So, there's no finding of specific intent in the court's ruling. And the facts don't inevitably lead to a finding of specific intent either. You know, this is not a sufficiency. This isn't a click case, this is a harmless error case. And, you know, the government's cases that it cites in its harmless error, the evidence is far more suggestive of specific intent. Well, step back a bit. You mentioned the one comment, and I do think that's the primary one the government points to, is that the court said Brooks' conduct wasn't merely the product of the heat of passion, but the court also said, when defense counsel said specifically that Brooks acted with specific intent, the judge responded by pointing out that Brooks shot eight times. And you do have case law indicating the number of times that you shoot could be indicative of a specific intent. I think it could be indicative of it. I mean, case, but in a harmless error case, you have to be confident that the district court would have found specific intent. He did fire eight times. Seven of the shots, of course, did not hit the car. The one that did hit the car, you know, it struck SJ, but it did end up striking the victim. Yes, one of them did. And, but, you know, it struck her in a very kind of strange and fluky way. This bullet went through the license plate. He shot eight times at the car, obviously intending to shoot at her, it would seem. So, well, not obviously, I shouldn't say that. But what else would you, I mean, I think it could support an inference of that. But whether, you know, it inevitably leads to that finding, I think, is an entirely different question. I mean, he could have been shooting to disable the car. He could have just been shooting out of rage and just happened to hit the car. But we just don't know. All we have is this video that's not very good quality. And, you know, it is very different from the sorts of cases the government cites where, you know, the defendant, like the Alexander case, that the government relies on a lot. The defendant confronted someone on the sidewalk, pointed a gun directly at them and fired it. I mean, in that sort of situation, the inference of intent to kill is almost inescapable. I mean, this isn't, I mean, the way I saw the video is much, much different than that. She jumps in this car and he runs out from the sidewalk and, you know, stands, it seems like he was even in the street maybe. He was. And shoots at the car as it's pulling away, turning around. Yeah, I mean, I think it's hard to tell from the video whether he's shooting at the car. I mean, we know that a bullet hit the car. So we have that. And hit the victim in the car, through the license plate, through the trunk. It was kind of a strange way, an unfortunate thing to have happened. But, you know, he's, he never, he kind of runs out in the street. He's sort of jumping up and down. His arm is bobbing up and down. He never pauses to aim. I mean, he's acting in an extremely reckless manner. There's no question about that. And we would never challenge that finding from the court. But whether it, you know, inevitably would lead to the court to find a, find specific intent. And I'd also note on that that, you know, the government pointed out below that malice can be shown through specific intent without deliberation. But it never argued that theory to the judge. It argued extreme recklessness. And if this evidence, if this video were so clear, you'd think the government would have pointed that out to the district court. I mean, this theory of specific intent is being pushed by the government for the first time on appeal. It's just not something that was argued before. In fact, in the district court, didn't the government argue that you didn't have to show specific intent? Yes, that extreme recklessness was enough. That's right. That's right. If I could just briefly jump back to the error part of this, I just want to address, the government asserts that there's a circuit split on this issue with three courts on the side. That's not accurate. The government's three cases, none of them address the question in this case, which is whether the guideline requires specific intent to kill. It wasn't argued to them, and they didn't decide it. Everyone just assumed malice was enough, and all the courts held in those cases was that the evidence was sufficient to support malice. There's only one circuit that has directly addressed this question, and that's the sixth. And it sides with our position in how the specific intent is required and reversed because the district court hadn't made the finding. Didn't have any analysis, though, either. No, I mean, it didn't have much analysis. It was short. I think the court treated it as an easy question because it's an attempt. I mean, what the court said was this is an attempt crime. It requires specific intent to kill. So I don't think, I think it was thought through. I just don't think the court thought it required much analysis. Unless the court has further questions, I have the remainder of my time. Thank you. Good morning, Judge Moritz, and may it please the court. Following a domestic dispute in which Jimmy Brooks brandished a foot-long knife at his girlfriend, outside her beauty supply store, and in the end fired eight shots at her vehicle as she fled the scene, the district court applied the attempted second-degree murder guideline. We would ask this court to affirm that application, and alternatively, if this court does find that, the district court should have found specific intent. We'd ask this court to affirm on the basis of harmless air, reasoning that the district court, if prompted, would have made that finding anyway. Why isn't it better for us to send her back and let the district court tell us that? Your Honor, I guess that question could always be asked in any question in which harmless air is on the table, right? But the harmless air rule, the point is to conserve judicial resources in cases where the outcome is essentially certain. What would have happened if remand were to occur? And I think here we can be certain about what would occur if this court were to remand. The first is, as you pointed out, Judge Moritz, there was that exchange on page, I believe it's page 631 of the record, where to start the sentencing hearing, Mr. Brooks' counsel, in addition to maintaining, of course, that he was the shooter, he raised the argument, well, if I was the shooter, I didn't have specific intent. And the district court specifically cut him off and said, well, he shot eight times. So that is really strong evidence of what the district court was thinking in this case. But it's not the only evidence. And there are two other reasons that I think this court can be fairly certain that if remanded, Judge Goodwin would have – Well, the cases, and the cases, though, on that point, and we do have cases saying, you know, if you shoot a number of times, especially when you're in close proximity, you know, you can infer intent. But these facts aren't really like that, are they? No, I think they are. It doesn't really match any of the cases that you cited that I could see. No, I think they are. I disagree, Judge Moritz. And even if we can infer intent, I'm not sure you can get there from the district court making that comment when the district court wasn't asked to find specific intent. I do think, Your Honor, that the Alexander case was briefly brought up in Mr. Brooks' argument. I mean, the reason that that case is significant is it's the same district judge. It's Judge Goodwin. And in that case, I'm going to argue the facts here are even more egregious than in Alexander. I mean, in Alexander, you had a defendant who's walking down the street and sees a passerby and says, what are you looking – or what are you looking at? And shoots him in the rear end at point blank range. I mean, he intended to shoot him in the rear end. And then while the victim is lying on the street bleeding and calls 911, the defendant, you know, runs away. Here, that's not what happened at all. When you look at the facts, I mean, Jimmy Brooks fired eight times. And it wasn't just, you know, eight shots out of the blue. It was a steadily – it was an altercation that steadily increased in hostility. From the moment that he pulled out that knife, the foot-long knife in the beauty supply store, to then going outside of the beauty supply store where the argument continued, and then attempting to, for the first time, assault his girlfriend by punching through the window of the car that she had crawled into. And she was so scared that she crawled out the other side, at which point she throws him the keys. And that, I guess, is the first problem with Mr. Brooks' argument that somehow, you know, he wasn't trying to kill her. I mean, at that point, Jimmy Brooks could have de-escalated the situation. Well, again, you know, if you come back here – if we remand it and you come back here and we're arguing this, you might have a point about inferring intent. But I don't see how we, at this point, on these pretty minimal facts, can have any real confidence that the district court would have made that finding. Well, again, I think there's – but, again, going back to the Alexander decision in the sense that it's the same judge. I mean, the question there was whether the district court had – you know, it was – that was reviewed for, I think, clear air in the application or plain air in the application of the cross-reference. But the question was whether the district court had found premeditation. In the district court, Judge Ide, writing for the court, Your Honor noted that, quote, the district court's thought process was evident from the record alone. And I think that's the case here. And I think that's the case here because, you know, the district court all but found premeditation. I mean, it noted, you know, page 684 to 685 of the record that Mr. Brooks had the, quote, you know, he had time to disengage with the male customer. He had time and opportunity to consider the situation. That is the language that essentially tracks premeditation. And – Isn't it also significant here that the district court – the defense counsel – this was an objection that was made. We're not here on plain air. This was strongly objected to at the sentencing hearing. And the judge was told specific intent is required for attempted second-degree murder. And the defense counsel maintained that throughout the hearing and kept reminding the judge. And the judge was very specific several times to ask the prosecutor, what are the elements of attempted secondary murder? The prosecutor maintains, well, you don't need intent. And eventually, the district court makes very specific findings and clearly doesn't – implicitly rejects the idea that you need intent. And, again, I think that goes to show the court could have said, well, even if it does require specific intent, you know, as defense counsel said, I'm going to go ahead and make some findings here. It didn't. Very specifically didn't. And I think that's a problem for you, too. I agree. I agree, Your Honor. I do think it is a – it's a bit of a problem, I'll readily admit. But I guess that takes me to one of the points that Mr. Brooks raises, that somehow the government is, you know, at the 11th hour now pressing specific intent. You know, I can tell the court what the government was thinking below, specifically because the government was me. The reason is, you know, I think that – so when you have the attempted murder guideline, there's no question, right, that premeditation is what separates first-degree murder from second-degree murder. Though, as we raise in our brief, I do think that the way this court and other circuits have addressed premeditation, namely that it can be developed in an instance – you know, in an instant, right, I think that does create some confusion. You know, when do you have premeditation, when do you have specific intent? But putting that aside, and I think that you – you know, you're traditionally taught, you know, in law school, the common law, that premeditation is somehow lying in wait. It's conniving and scheming. And so part of that was – it was my mistake. I was not well-versed in the law of premeditation. I thought, well, you know, this was a dispute that happened at a beauty supply store. This was not a long, drawn-out plan that Mr. Brooks had in his mind for months. And with that, I went – I went to the second-degree murder guideline. And looking at the host of – there wasn't a Tenth Circuit case on point, but there was a host of Eighth and Fourth Circuit decisions, which, while I agree with Mr. Brooks that they're not on point as the Sixth Circuit, there's plenty of language in those cases in which they know that only malice of forethought is required. And so with that in mind, I went to the second-degree murder guideline. And the short of it is, if I had thought more like an appellate lawyer, protected the record rather than advocating for the lower mens rea as a trial attorney, perhaps I wouldn't be here right now. But all that is to say this isn't a – you know, I think the same thing about Mr. Brooks' conduct as I did the day that we adopted the case in March of 2020, and that is he fired at the vehicle eight times because he was incensed that his girlfriend, S.J., had hugged another male inside a beauty – a beauty supply store. But to go back to the – you know, the question of a harmlessness judge mortis, I – you know, I think this is the – I think that if you looked at the other factual scenarios and cases, there might be more of a question about what Judge Goodwin would do. But I don't think that you have that here when you know what he did in the Alexander case only a few months prior, in which – again, I'm going to disagree with Mr. Brooks. I think the facts here are much more egregious than what took place in Alexander. And there, Judge Goodwin applied the attempted first-degree murder guideline. So I don't think there's any question here, especially what he said regarding the time and opportunity to consider the situation. I don't think there's any question that he would have found specific intent. And, you know, as we raise in our briefing, we're not, of course, going to ask the court to find premeditation in the event it's remanded. But I do think that, again, if I'd been a little bit more versed in the law of premeditation, I think the district court would have made that finding. The last thing that I'd point out is that, back to your question, Judge Moritz, about the line of cases, whether essentially they're analogous to ours. I would – I'm not sure I agree with Mr. Brooks' representations in his reply brief that they're not as serious. I mean, for example, the Alston case, you know, yes, it was a – of course, it was also a shooting. But it was firing shots across a bar. I don't think that's – and only two or three shots, I believe. I don't think that's much different than firing eight rounds at a vehicle. The Wade case that we cite, again, basically the same facts. You have a defendant who fired ten rounds at his girlfriend's vehicle as she fled. And one other point I would raise, I forgot to raise when we were discussing the video. You know, the idea that Mr. Brooks didn't pause to take aim, I take it that the court has seen the video based on the court's questions. But, again, Mr. Brooks is so – it's not as if – granted, Mr. Brooks did not drop to one knee and, you know, stop and take a deep breath and fire the gun. But he did step out, nearly step out, into oncoming traffic. I mean, you can see the way that the cars are reacting, that he is entirely focused on that vehicle. And, again, that is why he – that is why he was able to shoot Shantae Jackson, I guess, in a fluky way, I think, to use the court's words. Yes, one of those did pass through the license plate that hit her in the rear end. And there was a testimony to the effect at trial that had there not been stuff in the backseat of the vehicle, such that her vehicle had not – excuse me, such that her rear end had not been raised, it likely would have hit her in the spine. But Mr. Brooks was so laser-focused on shooting Shantae Jackson that he didn't, you know, not even seeing the cars that are coming. You've got one car stepping on its brakes – two, actually, I believe. You've got one speeding up to avoid his line of fire. But all the while, Mr. Brooks's, you know, sight remains set on the vehicle, his arm remains outstretched, and he fires eight rounds. Counsel, can I – before you run out of time, can you address the language? Yes, Your Honor. Have you given up on that? No, not at all. Okay, I'm turning my focus to harmlessness. Yeah, you've talked about harmlessness, but not the language. Yes, Your Honor. You know, I think it's telling, Your Honor, that the drafters did not choose – they very easily could have made A1 say attempted first-degree murder and A2 attempted second-degree murder. I actually think the fact that the guideline itself is titled attempted murder, but they chose not to do that, I think is significant. As far as Mr. Brooks's argument that we're reading out of the object of the offense, I'd argue that Mr. Brooks, you know, is reading out the language would have constituted. I mean, if would have constituted does not mean would have, you know, what would have happened if the act had been completed, I'm not sure what it means, which is essentially what the Eighth and the Fourth Circuits have all reasoned. Well, he defines object of the offense as essentially meaning purpose, the purpose of the offense, right? He does, Your Honor. And the purpose of the offense would have constituted. I'm not quite – with that in mind, I agree. It is – I think we can all agree it's at the very least ambiguous. If the object of the offense, if the object of the second-degree murder would have constituted second-degree murder. I mean, that itself seems almost redundant. If it's ambiguous, which it does perhaps seem to be, what do we do then? Well, fortunately, if it's ambiguous, I think this is actually, as I've explained, I think this is the perfect case that we could proceed under the harmless error analysis. I don't think this is a case where this court has to precisely decide what A1 and A2 entail. Aren't you essentially, as I indicated, just reading words rather than if the object of the offense, aren't you reading in if the completed offense would have constituted second-degree murder? Absolutely, because I can't – Isn't that what you're doing? And aren't you just deleting those words if the object of the offense? Well – Does that make sense? I am understanding, but I guess my rejoinder to that would be I'm not sure another way to read would have constituted other than to insert, you know, what would have happened if completed, which is essentially what the Fourth Circuit case is that we cite in our brief, how they've reasoned. So I don't have a perfect answer in regards to the language. Again, I think it is a little bit ambiguous. I think it could have been clearer if – excuse me, I'm running out of time. I finished my thought. I think that, of course, the drafters had simply said, you know, attempted first-degree murder falls within A1, attempted second-degree murder falls within A2. I think it would be clearer. But I think the point remains that I don't think this is the case where this Court has to decide that precise question. Thank you. I appreciate your candor and your argument, too. Thank you. I don't think there was any – is there a rebuttal? Thirty seconds. Oh, you had 4.20. I'm sorry, you had plenty of time. Oh, no, that's okay. I just want to make the point that if, you know, the government seems to be conceding that the guideline is at least ambiguous, if it's ambiguous, you just revert to the common law rule, which is that intent to kill is required. I'm happy to answer any questions about harmless error, which is mostly what the government's argument focused on, but I feel like we've addressed it all in the initial argument, so I cede the remainder of my time. Thank you, counsel. Appreciate both your arguments. They were very helpful, and the case will be submitted.